JOSEPH B. SALA, Ph.D.

1  A. I believe that's covered in the
2  section.
3  Q. Are you a workplace safety expert
4  also?
5  A. I -- as it pertains to human factors
6  issues and some of the -- the decisions and
7  considerations and particularly as it relates to
8  safety information, yes, that would be an area
9  that I have -- have testified in.
10 Q. You're critical of Seaboard's actions
11 on the date, correct?
12 A. I believe that, yes, there are a
13 number of action decisions that I'm critical of in
14 this report.
15 Q. You're critical of Glen Coggins'
16 actions on the date of this incident, correct?
17 A. I believe that Mr. Coggins
18 unfortunately made some decisions and took some
19 actions that were unsafe and -- and placed him in
20 the position of -- of a potential hazard.
21 Q. So that's yes, you are critical of
22 Mr. Coggins' actions?
23 A. Yes. I think that -- that he -- many
24 is -- some of his actions at the time of the

JOSEPH B. SALA, Ph.D.

1  incident led to the occurrence of this.
2      Q.  If you remove the actions of Seaboard
3  and the actions of Mr. Coggins, do you have any
4  criticisms?
5      A.  I'm sorry?
6      Q.  If you remove the actions of
7  Seaboard -- assume for me a minute you're not
8  allowed to testify about the actions of Seaboard
9  and you're not allowed to testify about the
10 actions of Mr. Coggins.  Do you have any opinions
11 to give?
12     A.  Yes, I think that -- that I can -- am
13 still addressing the -- the -- the -- the
14 relevance of the -- the warnings and the necessity
15 of a warning in this current incident and this
16 current location.
17     Q.  And it's your testimony, I think, no
18 additional warning presented on the machine would
19 have affected Mr. Coggins' behavior or actions at
20 the time of the incident.  I'm on page 11, the
21 last sentence of --
22     A.  Yes.
23     Q.  -- the first full paragraph.
24         So they could have had the best